**TERRY CARSON**
1361 N. Skyline Drive
Idaho Falls, Idaho 83402
(208) 270-2929
terry@westernconsumer.com

**DANIEL JOHNSTON**
1361 N. Skyline Drive
Idaho Falls, Idaho 83402
(208) 270-2929
dan@westernconsumer.com

Plaintiffs, Pro Se.[1]

**U.S. COURTS**

**SEP 1 0 2014**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRY CARSON and DANIEL JOHNSTON, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL RECOVERY SERVICES, LLC, (an Idaho Limited Liability Company); SMITH DRISCOLL & ASSOCIATES, PLLC, (an Idaho Limited Liability Company); BRYAN N. ZOLLINGER, BRYAN D. SMITH, SADIE HUNTSMAN and ROBERT DRAPER, <br><br> Defendants. | Case No. 4:14-CV-379-REB <br><br> **COMPLAINT** <br><br> 1. Violations of Fair Debt Collection Practices Act <br><br> 2. Violations of the Idaho Consumer Protection Act <br><br> 3. Abuse of Process <br><br> **JURY TRIAL DEMANDED** |

---

[1] Plaintiffs recognize the perils of self-representation, and are actively seeking experienced consumer litigation counsel willing to represent them in light of their meager financial resources.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          1

**INTRODUCTION**

1.   Plaintiffs Terry Carson and Daniel Johnston, married individual consumers, bring this action seeking redress against Defendants Medical Recovery Services, LLC, Smith Driscoll & Associates, PLLC, Bryan N. Zollinger, Bryan D. Smith, Sadie Huntsman, and Robert Draper for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Idaho Consumer Protection Act, Idaho Code § 48-601 *et seq.* ("ICPA"), both of which prohibit debt collectors, and others, from engaging in abusive, deceptive, and unfair practices. Plaintiffs also assert claims against the Defendants for abuse of process. Plaintiffs seek statutory and actual damages, punitive damages under Idaho law, costs, attorneys' fees, equitable relief pursuant to the FDCPA and the Idaho Consumer Protection Act, monetary damages for the harm caused by the Defendants abuse of process, as well as declaratory relief and a preliminary and permanent injunction prohibiting Defendants from continuing their unfair and unlawful business practices.

**JURISDICTION and VENUE**

2. The jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue in this district is proper because Defendants transact business here and the conduct giving rise to these claims arise in this district. Defendants have

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          2

received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## PARTIES

4. Plaintiffs Terry Carson and Daniel Johnston are, and were at all times relevant, "consumers" and "debtors" within the meaning of 15 U.S.C. § 1692a(3). The Defendants sought to collect from the Plaintiffs alleged debts that were incurred for non-business purposes.[2] The purported debt that the Defendants sought to collect from the Plaintiffs were "consumer debts" as defined by the FDCPA, 15 U.S.C. § 1692 a(5). The Plaintiffs reside in Idaho Falls, Idaho.

5. Defendant Medical Recovery Services, LLC ("MRS") was at all times mentioned herein, and is now, an Idaho Limited Liability Company, and a licensed Debt Collection Agency, pursuant to the Idaho Collection Agency Act, Idaho Code § 26-2221 *et seq*. MRS is located at 430 Shoup Avenue, Idaho Falls, Idaho 83405. The principal business of MRS is the collection of debts in this State. MRS is, and was at all times relevant, a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

6. Defendant Smith Driscoll & Associates, PLLC ("Smith Driscoll") was at all times mentioned herein, and is now, an Idaho Limited Liability Company. Smith Driscoll is located at 414 Shoup Avenue, Idaho Falls, Idaho 83405. Smith Driscoll is an Idaho law firm, the principal business of which is the collection of debts

---

[2] These are debts that have arisen from services provided primarily for personal, family, or household purposes, as defined by 15 U.S.C. § 1692a(5). The debt herein arises from emergency and other medical services.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          3

in this State. Smith Driscoll is, and was at all times relevant, a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

7. Defendants Bryan N. Zollinger ("Zollinger") and Bryan D. Smith ("Smith") were at all times mentioned herein, and are now, attorneys employed by Smith Driscoll. Zollinger and Smith are located at 414 Shoup Avenue, Idaho Falls, Idaho 83405. Their principal business is the collection of debts in this State. Zollinger and Smith are, and were at all times relevant, "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).[3]

8. Defendants Sadie Huntsman ("Huntsman") and Robert Draper ("Draper") were at all times relevant, and are now, paralegals employed by Smith Driscoll, and work primarily for Zollinger.[4] Huntsman and Draper are located at 414 Shoup Avenue, Idaho Falls, Idaho 83405. Their principal business is the collection of debts in this State. Huntsman and Draper are, and were at all times relevant, "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

9. Defendants MRS, Smith Driscoll, Zollinger, Smith, Huntsman, and Draper are sometimes referred to as "MRS and its attorneys" in this complaint. MRS and its attorneys are engaged in the collection of debts from consumers using the mail, telephone, and judicial court system. MRS and its attorneys regularly collect, or attempt to collect, consumer debts alleged to be due another.

---

[3] MRS and its attorneys file thousands of lawsuits against Idaho consumers using factory-like automated processes with little or no meaningful attorney involvement.

[4] The paralegals are named because they signed the arrest letters that were dated January 2, 2013, August 9, 2013, and May 28, 2014. Huntsman also demanded a payment of $1,500 to settle a lawsuit without first consulting her supervising attorney. The stated sum exceeded the amount sought in the complaint itself.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          4

10. At all times mentioned herein, all of the Defendants, and each of them, were the agents, affiliates, employees, partners, creditors, debtors, fiduciaries, alter egos, or other representatives of the other Defendants.

11. The acts charged in this Complaint have been done by the Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' affairs.

12. Defendants are all entities or individuals who contributed or participated in, or authorized the acts or conspired with each other to commit the acts and do the things complained of, which caused the injuries and damages to Plaintiffs. Each of the Defendants acted as principal and agent, each of the other, and combined and concurred each with the other in committing the acts that injured the Plaintiffs.

## FACTUAL ALLEGATIONS

*Terry Carson Acquires Medical Debt*

13. Terry Carson received services from Intermountain Emergency Physicians ("Intermountain") and Rosemark WomenCare Specialists ("Rosemark"). The account numbers for the Intermountain billing are: 15266624, 15319586, 15346426, 21723412, 22865537, and 34256549. The account number for the Rosemark billing is: 69074. The numbers were assigned by the original creditors, and represent the only debt herein referenced.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          5

*MRS Begins Collecting Medical Debt From Terry Carson*

14. MRS began trying to collect the above-referenced debt in March of 2011, which continued at least until August of 2014. MRS assigned the following account numbers to the Intermountain debt: 144288, 123263, 130140, 159991, 164308, and 217871. It assigned the Rosemark debt account number: 167171. The MRS numbers do not match those assigned by the original creditors, and MRS has never included the creditor account numbers in any of its letters, or its subsequent litigation.

15. MRS has not listed the true names of the creditors in any of its letters. MRS referred to Intermountain Emergency Physicians as "Intermountain Emergency Ph."  MRS referred to Rosemark WomenCare Specialists as "Womens Healthcare Associat." These are not the true names of the creditors, and the creditors themselves use neither appellation.[5] They appear in none of the billing statements from the creditors. The Plaintiffs have been provided false names from which to guess the true identity of the creditors.

*The Dunning Letters*

16. Terry Carson has received thirteen (13) dunning letters from MRS, many of which contain multiple account numbers. These were dated December 14, 2011, January 17, 2012, July 11, 2012, August 16, 2012, September 24, 2012, October 23, 2012, November 26, 2012, January 3, 2013, April 11, 2013, May 9, 2014,

---

[5] Rosemark is a fictitious name for Women's Healthcare Associates, P.A. But the only way a consumer would know this is to pour through the business entity index maintained by the Idaho Secretary of State. Rosemark does not use this name with the public.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          6

June 9, 2014, July 10, 2014, and August 11, 2014. The letters are of four kinds; an initial notice, a final notice, a seventy-two hour cost of suit notice, and a ten day legal action notice. Representative samples, and other documents, are attached to the Complaint, and are incorporated by reference herein. These are identified by the Bates Stamp in the lower right corner.[6]

17. Each of the initial notice's mailed to Terry Carson contain two sections; a demand for payment and a validation notice (Bates No. MRS00001). The demand for payment is prominently featured in the body of the letter, while the validation notice is obliquely placed after the closing. The demand for payment is writ in large font with upper-cased letters, while the validation notice itself is in a smaller font with lower-cased letters. The statement that a debt will be assumed valid if not disputed within thirty days is contradicted by the demand for immediate payment. The letter provides three ways to settle; each of which require payment, implying that the debt is valid, which renders the validation notice stating otherwise superfluous. The notices also fail to include a statement that Plaintiffs can dispute only a portion of the debt, rather than all or none of it.

18. The validation notice contains a threat to report the debt to credit reporting agencies (Bates No. MRS00001). MRS states that it is required by law to report negative information to the credit reporting agencies, or at least to notify the Plaintiffs that it may. This statement is false.[7] MRS has also not reported the

---

[6] The letters, and other documents, are scanned copies, reproduced at their original size and unaltered, with the exception of the digital affixation of a Bates Stamp, which is produced with LexisNexis CaseMap and Adobe Acrobat.

[7] MRS appears to have copy/pasted its validation notice, or at least part of it, from notices issued to California consumers, which does require such notice be

debt to credit reporting agencies, and never intended to do so. It was an empty threat intended to dissuade the Plaintiffs from disputing the debt.

19. MRS has mailed four final notices (Bates No. MRS00074). These are dated January 17, 2012, August 16, 2012, January 3, 2013, and August 11, 2014. Only the first was final.[8] The final notices threatened legal action if payment was not received immediately, since the only action that can come after a final notice is a lawsuit. MRS also mailed two seventy-two hour cost of suit notices (Bates No. MRS00080). These were dated April 11, 2013 and June 9, 2014. Both threatened legal action if payment wasn't received within seventy-two hours. No legal action followed the notices. MRS also mailed a letter threatening legal action if payment was not received within ten days (Bates No. MRS00077). This was dated May 9, 2014. Legal action did not follow this notice either. MRS followed this notice with another final notice which was dated August 11, 2014. MRS has failed to take action upon any of its time-limited demands for payment, and never intended to do so. The purpose of these false repetitive threats is to intimidate, and run up costs to be included in an eventual lawsuit.

20. The letters dated April 11, 2013 and June 9, 2014 contain threats of police action as well (Bates No. MRS00080). MRS asked the Plaintiffs if they realize

---

given. Cal. Civ. Code 1785.26(c)(2). California law is inapplicable to Idaho consumers.

[8] MRS filed suit on February 23, 2012 in Bonneville County Case No. CV-2012-1123-OC. The suit covered three of the seven accounts (MRS No. 144288, 130140, and 123263). MRS failed to provide validation notices for the latter two, or if it did the Plaintiffs did not receive them. MRS mailed some of the letters to the wrong address, despite having received accurate information from the creditors.

what it can instruct the police to do, going on to state that it could have police take anything the Plaintiffs own or have, including their home, property, vehicles, furniture, and the like. MRS also stated that the Plaintiffs would have to pay attorney fees, interest, court costs, and police fees. A similar statement was made in the letter dated May, 9, 2014 (Bates No. MRS00077). These are all actions that cannot legally be taken.[9] Debt collection activities in Idaho are governed by the Idaho Collection Agency Act, which prohibits debt collectors from collecting anything incidental to the principal debt. Idaho Code § 26-2229A(4). See *Medical Recovery Services, LLC v. Strawn*, 321 P.3d 703, 706 (Idaho, 2014).

*The Summons and Complaint*

21. MRS and its attorneys, Smith Driscoll & Associates, PLLC, Bryan D. Smith, and Bryan N. Zollinger, filed suit against the Plaintiffs on February 23, 2012. MRS and its attorneys served a summons, which they drafted themselves, stating that the Plaintiffs had *thirty days* to respond (Bates No. MRS00007). The statement is false. Idaho R. Civ. P. 12(a) provides only *twenty days* within which to respond to a complaint. MRS and its attorneys also attached a full page FDCPA validation notice to the complaint, which refers to a thirty day period an additional six times (Bates No. MRS00006). The purpose for including false information in the summons was to cause a default; the possibility of which was

---

[9] The Plaintiffs have not ignored the conditional language in which some of these threats are couched. MRS has liberally sprinkled its statements with if's, may's, can's and could's. It has also used the conditional phrasing "with a judgment" and "above legal exemptions." But this Circuit long ago rejected attempts by debt collectors to hide behind the "flimsy disguise" of conditional language. *Gonzales v. Arrow Fin. Servs. LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011).

furthered by the validation notice attached to the complaint. The purpose of this notice, however, was to mislead the Plaintiffs into believing that they did not need to respond to the lawsuit, or that the documents they received were not legal process requiring a response; that Plaintiffs could instead dispute the debt with MRS, which had promised not to consider the debt to be valid until the dispute period had passed.[10]

22. Terry Carson was served with a copy of the complaint on March 31, 2012. The Plaintiffs contacted Smith Driscoll acknowledging service, but explained that they were unsure if they actually owed the debt, and requested information listing the medical services that were provided. Defendant Sadie Huntsman agreed to obtain and mail billing statements to the Plaintiffs for review. Huntsman stated that the Plaintiffs could also avoid judgment if they agreed to pay $300 a month for five months for a total of $1,500. The Plaintiffs questioned why the settlement amount was greater than the amount sought in the complaint. Huntsman explained that it was a settlement fee. The Plaintiffs conditionally agreed to the terms pending the receipt of information establishing the legitimacy of the debt. The promised information wasn't received until April 24, 2012.[11] It was

---

[10] The validation requirements of the FDCPA are inapplicable to formal pleadings filed in a civil action. 15 U.S.C. § 1692g(d). Thus, including them is without any legitimate purpose, and can only be intended to mislead.

[11] The letter enclosed with the information was actually dated April 13, 2012. It was received later because MRS delays mailing some letters in order to run out the clock, or minimize the time in which a consumer may effectively respond. The most recent example of this occurring was in July of 2014. MRS mailed an initial validation notice that was dated July 10, 2014, but the envelope it came in was postmarked July 25, 2014 (Bates No. MRS00081 and MRS00082). The envelope was mailed from Rexburg, Idaho.

determined that the debt was partially illegitimate, but the Plaintiffs were unable to object because the time for response had passed.[12] Still wishing to avoid a judgment, Plaintiffs made payments toward the $1,500 settlement agreement. Despite this, MRS and its attorneys filed for an entry of default on August 7, 2012, which was subsequently issued August 10, 2012.[13] Plaintiffs were not provided with any notice before this action was taken.

23. The complaint named "Jane Doe" as a co-defendant spouse. It alleges that Terry Carson and "Jane Doe" incurred the debt in furtherance of the marriage community. This is a false statement. Terry Carson was not married when medical services were provided, or when MRS and its attorneys filed suit.[14] MRS and its attorneys had no reasonable basis for believing that a spouse existed when it named "Jane Doe" as a co-defendant, and its attorneys refused to amend the complaint when the Plaintiffs brought this to their attention.[15] The Debt Collector

---

[12] Zollinger and Smith also alleged in the complaint that it was assigned the debt from Intermountain Emergency Physicians. Plaintiffs have reason to believe that this is also false. Intermountain's billing service, EPBS-Intermedix, stated that it believed the debt may have been sold to MRS, or Smith Driscoll, because the accounts are listed as paid in full, which is what would occur if they were charged off and sold. If this is true, MRS and Smith Driscoll violated the Idaho Collection Agency Act, Idaho Code § 26-2221 *et seq.*, since neither is licensed to buy debt in Idaho.

[13] MRS and its attorneys are rely heavily on collections software to notify them of impending deadlines. The software notified them that the court would issue a notice of proposed dismissal pursuant to Idaho R. Civ. P. 40(c) on August 8, 2012, which it did. Hence the significance of filing for default the day before the notice was issued.

[14] Terry Carson and Daniel Johnston were married on April 21, 2014, which was nearly two years after MRS and its attorneys took a default judgment against her.

[15] MRS and its attorneys routinely name "Doe" co-defendants without conducting any reasonable inquiry to determine if the allegation is well grounded in fact, or warranted by existing law. Idaho R. Civ. P. 11(a)(1).

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          11

Defendants taxed the costs of failed service upon the non-existent spouse to the Plaintiffs, and received attorney fees and interest on top of that. The purpose of adding non-existing Doe co-defendants is to maximize potential streams of revenue, and to run up costs.

24. The complaint stated that Plaintiffs are liable for $125.28 in prejudgment interest. This is a false statement. MRS and its attorneys calculate interest from the date medical services are provided, rather than the date on which the final amount becomes mathematically ascertainable.[16] Modern medical billing procedures are incapable of precise tabulation on the date of service.

25. MRS and its attorneys have attempted to collect the following costs since judgment was entered on August 10, 2012: Accrued Interest - $37.91, Recording Fee - $20.00, Writ Fees - $8.00, Search Fee - $5.00, Sheriff's Fees - $80.00, and Service Fees - $150.00. These costs are prohibited by law.[17] Even if they weren't, MRS and its attorneys are trying to double collect Sheriff's Fees since these fees were included in the judgment. The service fees are not legitimately incurred. These fees are for personal service of documents, but personal service is not required in lieu of mailing. Service itself is carried out by MRS and Smith Driscoll employees; the purpose of which is to run up costs.

---

[16] Prejudgment interest is not to be awarded until the principle amount is liquidated or capable of mathematical computation. *Dillon v. Montgomery*, 138 Idaho 614, 618 (Idaho 2003).

[17] *Medical Recovery Services, LLC v. Strawn*, 321 P.3d 703, 706 (Idaho, 2014). MRS and its attorneys last attempted to collect these costs when they applied for a Writ of Execution on August 28, 2014. This is a blatant disregard of the decision of the Idaho Supreme Court that bears their name.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          12

*The Arrest Letters and Interrogation*

26.   Huntsman and Draper mailed letters threatening to have Terry Carson arrested if she did not appear for a debtor examination.[18] MRS and its attorneys routinely manipulate the court-facilitated debtor examination process to conduct private interrogations of consumers. Zollinger obtains an order, which he drafts himself, requiring consumers to appear for examination and provide testimony, before a judge or referee, under oath, regarding their finances (Bates No. MRS00078). Letters are then mailed stating that failure to appear will result in a body attachment (Bates No. MRS00079). When Terry Carson appeared as ordered, she was taken into a small room and privately interrogated by Zollinger.[19] In obtaining an order of examination, Zollinger failed to also arrange to have it conducted before a judge or referee, under oath. The Plaintiffs have never appeared before a judge or referee, or been placed under oath. A consumer cannot object to the process, or challenge the propriety of the questions, because there is no one present to object to other than the debt collector. Zollinger also attempted to collect the debt from Daniel Johnston, although he was not a judg-

---

[18] Regardless of the label applied to the process, threats of arrest are made in conjunction with and for purpose of collecting a debt. These letters are dated January 2, 2013, August 9, 2013, and May 28, 2014.

[19] It should be noted from the outset that Plaintiffs do not contend that the debtor examination, or the corresponding authority of the Court to enforce its orders, is unlawful. It is the manner in which this process is manipulated for an improper purpose that makes it unlawful. The debtor examination is limited to shaking loose specific property that the debtor "unjustly refuses to apply toward" the judgment, which is evident from reading Idaho Code §§ 11-501 and 11-502 in *pari materia*. MRS and its attorneys fail to discover specific property unjustly held prior to obtaining an order; instead they use the process as a substitute for post-judgment discovery provided by Idaho R. Civ. P. 69(c).

ment debtor, but Zollinger was prohibited by law from doing so.[20] The Plaintiffs cooperated out of fear that objection would result in arrest.[21] The process is even more repugnant in light of the fact that the letters threatening arrest for failing to appear also state that the orders can be ignored if Terry Carson presented herself for interrogation at Smith Driscoll's office (Bates No. MRS00079).

## FIRST CAUSE OF ACTION

### (Against Medical Recovery Services, LLC)

27. Plaintiffs repeat and reassert the above allegations as if fully stated herein.

28. The FDCPA was enacted to protect alleged debtors from deceptive and improper collection methods. MRS violated the FDCPA. The Defendant's violations include, but are not limited to, the following actions:

 a. 15 U.S.C. § 1692e (Generally), as a result of falsely stating that it was required by law to report the debt to a consumer credit bureau, or notify the Plaintiff that it may.

 b. 15 U.S.C. § 1692e(2)(a), as a result of falsely stating that it was entitled to receive any amount incidental to the principal obligation, including interest and attorney fees.

---

[20] Idaho law does not permit collection of money from a non-judgment debtor simply because that person later marries the judgment debtor. To collect from Daniel Johnston, Zollinger's sole remedy is to institute an independent action. *Mewes v. Jacobson,* 70 Idaho 427, 429 (Idaho 1950).

[21] There is no independently reliable record kept to verify that the Plaintiffs even appeared. The continued liberty of the Plaintiffs is left to the good-faith of the debt collector to admit it, and forgo seeking an arrest warrant.

c. 15 U.S.C. § 1692e(5), as a result of threatening to report the debt to a consumer credit bureau, without actually intending to do so.

d. 15 U.S.C. § 1692e(5), as a result of threatening to commence legal action within a specified time period, without actually intending to do so.

e. 15 U.S.C. § 1692e(5), as a result of threatening to have the police take the Plaintiffs property without having the legal right, or present intention to do so.

f. 15 U.S.C. § 1692e(8), as a result of threatening to communicate information to a credit reporting agency that is known, or should be known, to be false.

g. 15 U.S.C. § 1692f(1), as a result of collecting, or attempting to collect, amounts incidental to the principal obligation, without being permitted by law to do so, including interest and attorney fees.

h. 15 U.S.C. § 1692f(6), as a result of threatening to have the police take property from the Plaintiffs that is exempt by law from disablement or dispossession.

i. 15 U.S.C. § 1692g(a)(2), as a result of failing to include the true name of the creditor in its initial letters.

j. 15 U.S.C. § 1692g(a)(3), as a result of failing to include a notice that the Plaintiffs could dispute a portion of the debt, and including a notice that was overshadowed by a demand for immediate payment.

k. 15 U.S.C. § 1692g(a)(4), as a result of failing to include a notice that the Plaintiffs could dispute a portion of the debt, and that if disputed, it would obtain verification of that portion of the debt.

## SECOND CAUSE OF ACTION

(Against Smith Driscoll & Associates, PLLC)

29. Plaintiffs repeat and reassert the above allegations as if fully stated herein.

30. The FDCPA was enacted to protect alleged debtors from deceptive and improper collection methods. Smith Driscoll violated the FDCPA. The Defendant's violations include, but are not limited to, the following actions:

a. 15 U.S.C. § 1692e (Generally), as a result of falsely stating that "Jane Doe" was the spouse of Terry Carson, when it knew, or should have known, that she was not.

b. 15 U.S.C. § 1692e (Generally), as a result of including a false and misleading summons with its complaint, which stated that Terry Carson had thirty days to respond, when in fact, she only had twenty days.

c. 15 U.S.C. § 1692e (Generally), as a result of including a false and misleading validation notice with its complaint, which implied that a response to the complaint was not required.

d. 15 U.S.C. § 1692e (Generally), as a result of stating that Terry Carson could ignore a Court order to appear, when in fact, she had no legal right to do so.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          16

e. 15 U.S.C. § 1692e(2)(a), as a result of falsely stating that it was entitled to receive any amount incidental to the principal obligation, including interest and attorney fees.

f. 15 U.S.C. § 1692e(3), as a result of initiating legal process with little or no meaningful attorney involvement, including reliance upon debt collection software to draft legal pleadings and other papers without meaningful review or involvement from an actual attorney.

g. 15 U.S.C. § 1692e(5), as a result of threatening to have the police arrest Terry Carson in connection with the collection of a debt, which was an action that could not legally be taken.

h. 15 U.S.C. § 1692f (Generally), as a result of improperly manipulating the judicial process to indirectly take actions that cannot lawfully be taken directly, including compelled private interrogation of debtors, and threats of arrest in connection with the collection of a debt.

i. 15 U.S.C. § 1692f (Generally), as a result of agreeing to a payment plan, actually receiving payments, and then taking a judgment by default, without notice.

j. 15 U.S.C. § 1692f(1), as a result of collecting, or attempting to collect, amounts incidental to the principal obligation, without being permitted by law to do so, including interest and attorney fees, both before and after judgment.

### THIRD CAUSE OF ACTION

(Against Bryan N. Zollinger and Bryan D. Smith)

31. Plaintiffs repeat and reassert the above allegations as if fully stated herein.

32. Plaintiffs repeat and reassert paragraph (30), including all subparts, as if fully stated herein, against Bryan N. Zollinger.

33. Plaintiffs repeat and reassert paragraph (30), including all subparts, except for subparts (h) and (i), as if fully stated herein, against Bryan D. Smith.

### FOURTH CAUSE OF ACTION

(Against Sadie Huntsman and Robert Draper)

34. Plaintiffs repeat and reassert the above allegations as if fully stated herein.

35. The FDCPA was enacted to protect alleged debtors from deceptive and improper collection methods. Smith Driscoll violated the FDCPA. The Defendant's violations include, but are not limited to, the following actions:

    a. 15 U.S.C. § 1692e (Generally), as a result of stating that Terry Carson could ignore a Court order to appear, when in fact, she had no legal right to do so.

    b. 15 U.S.C. § 1692e(5), as a result of threatening to have the police arrest Terry Carson in connection with the collection of a debt, which was an action that could not legally be taken.

    c. 15 U.S.C. § 1692f (Generally), as a result of improperly manipulating the judicial process to indirectly take actions that cannot lawfully be

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)    18

taken directly, including compelled private interrogation of debtors, and threats of arrest in connection with the collection of a debt.

d. 15 U.S.C. § 1692f (Generally), as a result of agreeing to a payment plan, actually receiving payments, and then taking a judgment by default, without notice.

e. 15 U.S.C. § 1692f(1), as a result of collecting, or attempting to collect, amounts incidental to the principal obligation, without being permitted by law to do so, including interest and attorney fees, both before and after judgment.

## FIFTH CAUSE OF ACTION

### (Violations of the Idaho Consumer Protection Act)

36. Plaintiffs repeat and reassert the above allegations as if fully stated herein.

37. The ICPA was enacted to protect consumers from misleading, false, or deceptive practices. The Defendants' violated the ICPA. The Defendants' violations include, but are not limited to, the following actions:

a. Idaho Code §§ 48-603(17) and 48-603(18), as a result of the Debt Collector Defendants unfair and unconscionable conduct for which the claims of paragraph's (28), (30), (32), (33), and (35) are based, including all subparts, which are repeated and reasserted as if fully stated herein.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          19

## SIXTH CAUSE OF ACTION

### (Abuse of Process)

38. Plaintiffs repeat and reassert the allegations contained in paragraph's (23) and (26), as if fully stated herein.

39. The Debt Collector Defendants' actions were a willful use of legal process not proper in the regular course of proceedings, and were committed for an improper purpose; namely coercion aimed toward causing the Plaintiffs to surrender money or property.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request judgment as follows:

40. A declaration that the Debt Collector Defendants' conduct described herein violates the FDCPA and ICPA.

41. A declaration that the Debt Collector Defendants' conduct constitutes an abuse of discretion under Idaho law.

42. An injunction enjoining, preliminarily and permanently, Defendants from continuing the unlawful conduct alleged herein, including an injunction barring the Defendants from filing lawsuits against "Doe" defendants without first having a reasonable belief that they exist, and pursuing debtor examinations without first having engaged in post-judgment discovery, and then only for the purpose of shaking loose specific property unjustly held against satisfaction of the judgment.

PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          20

43. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1).

44. Actual damages pursuant to Idaho Code § 48-608(1), or statutory damages of not less than $1,000, whichever is greater.

45. Statutory damages of up to $1,000 per defendant pursuant to 15 U.S.C. § 1692(k)(2)(a).

46. Punitive damages of not less than $25,000 for repeated or flagrant violations pursuant to Idaho Code § 48-608(1).

47. An award for Plaintiffs for the costs of this suit, including expert fees, and reasonable attorney fees, as provided by law.

48. An award for such other and further relief as the nature of this case may require or as this Court deems just, equitable, and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.


Dated: September 4, 2014


*Terry Carson*
_____
Terry Carson


*Daniel Johnston*
_____
Daniel Johnston


PLAINTIFFS COMPLAINT (UNLAWFUL DEBT COLLECTION PRACTICES)          21